T.C. Summary Opinion 2001-173


UNITED STATES TAX COURT


BROADRICK R. MOORE AND DAWN J. INGRAM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5686-00S.                    Filed October 30, 2001.


Broadrick R. Moore and Dawn J. Ingram, pro se.

<u>Ross W. Greenberg</u>, for respondent.



PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  Unless otherwise

indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes of $2,138 in 1996 and $2,250 in 1997. The issues for decision are whether petitioners' Amway activity was an activity engaged in for profit under section 183, and, if so, whether petitioners have substantiated the claimed deductions related to the activity.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners were married during the tax years 1996 and 1997. Their children, Chelsea and Kendall, were born in 1991 and 1995, respectively. Petitioner Broadrick Moore (hereinafter petitioner) worked full time as a lineman for an electric company, which required him to travel on occasion. He was often on call 24 hours a day, 7 days a week. Petitioner Dawn Ingram (hereinafter Ms. Ingram) worked full time as a receptionist in a medical office during the years in issue. Petitioners resided in Beverly Hills, Florida, at the time that they filed their petition.

Petitioners were recruited in 1994 as "downline" distributors of Amway Corp. (Amway) consumer products by an "upline" distributor, and they registered as Amway independent business owners (IBO). The originating distributor is an "upline" distributor in relation to his recruit, who is a "downline" distributor. An upline distributor receives points or commissions and, therefore, profits, based on a downline distributor's sale of the Amway products and on the downline distributor's success in developing his own downline distribution network. Additionally, a distributor profits from the sale of the Amway products to third-party clients. See Elliott v. Commissioner, 90 T.C. 960 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990), for a general discussion of the operation of an Amway activity.

Petitioners "counseled upline", that is, they sought direction and training from their upline distributors. Petitioners purchased motivational tapes and a marketing plan from Amway. In addition, they attended weekend training seminars with educational groups that work in conjunction with Amway.

Because their only previous business experience had been petitioner's involvement in a partnership that bought and sold real estate, petitioners hired a certified public accountant (C.P.A.) in 1994. Upon the C.P.A.'s advice, petitioners purchased a computer-based accounting program, Peachtree, which

they used to prepare monthly and long-term expense and income reports used for budgeting. With the exception of the advice from their C.P.A., petitioners did not seek guidance from an independent source.

Petitioners prepared a handwritten outline of their statement of goals in their January 1995 calendar notes. Petitioners' goals included recruiting three downline distributors every month who would, in turn, find three of their own downline distributors. The goals also project and calculate commissions to be received from the downline distributors and customers. For example, the goals included as follows: "Increase 300PV Per Month" and "Find 10 Customers = 500 - 1000 PV".

Petitioners maintained calendars for 1996 and 1997 with their daily personal and Amway engagements. These calendars have handwritten entries indicating cities, hotels, and other items such as "STP" (show the plan--a marketing of their business plan), but it is not always clear which entries are related to the Amway activity. Petitioners maintained daily and monthly logs of "Business Expenses", charts of their miles traveled, parking, tolls, fares, meals, lodging, and other expenses (e.g., tickets) from January 1996 through December 1997. In the "Business Purpose - Where, Why, Who, etc." column in these charts, petitioners wrote various cities, words, and abbreviations (e.g., "Ft. Lauderdale STP", "Gainsville Seminar",

and "Tax Meeting").  Petitioners also produced an "Office Expense" chart listing monthly totals for their office expenses such as home mortgage, electricity, telephone, heat, property taxes, termite treatment, child care, computer program, and C.P.A. fees for 1996.

In 1997, petitioners had approximately 30 downline distributors in their distribution chain.  Petitioners realized in 1996 that their activity was not as profitable as they had hoped, and petitioners alleged that they changed their marketing approach--that is, how they approached the activity and how they contacted people.  They ended their Amway activity sometime in the year 2000.

Petitioners filed their 1996 and 1997 Federal income tax returns as married filing jointly.  They reported gross income from wages in the amount of $66,966 in 1996 and $68,399 in 1997. Petitioners reported income and claimed expenses on Schedules C, Profit or Loss From Business, with respect to their Amway activity as follows:

|                                | 1996      | 1997      |
|--------------------------------|-----------|-----------|
| **Income**                     |           |           |
| Gross receipts                 | $555      | $924      |
| Cost of Goods sold             | 1,248     | 681       |
| Gross income (loss)            | (693)     | 243       |
|                                |           |           |
| **Expenses**                   |           |           |
| Advertising                    | 25        | ---       |
| Car & truck                    | 4,398     | 6,918     |
| Depreciation                   | 1,732     | 1,074     |
| Legal & professional services  | 435       | 395       |
| Office expense                 | 143       | 109       |
| Repairs & maintenance          | 131       | ---       |
| Taxes & licenses               | ---       | 7         |
| Travel                         | 1,683     | ---       |
| Meals & entertainment          | 76        | 209       |
| Other (unspecified)            | 3,681     | 6,437     |
| Total expenses                 | 12,304    | 15,149    |
|                                |           |           |
| **Net income (loss)**          | (12,997)  | (14,906)  |

The assets for which petitioners took a depreciation deduction in 1996 are as follows: A "satellite", a computer, a computer upgrade, a computer hard drive, a telephone system, software, a 1991 Ford, and a 1988 BMW. Petitioners did not provide a list of the assets for which depreciation was claimed in 1997.

Petitioners reported gross income (loss) and net losses for the 5-year period during which they participated in the Amway activity as follows:

| | 1995 | 1996 | 1997 | 1998 | 1999 | Total |
|---|---|---|---|---|---|---|
| Gross income (loss) | $250 | ($693) | [1]$243 | $1,266 | $443 | $1,509 |
| Net loss | ($13,770) | ($12,997) | ($14,906) | ($11,049) | ($8,437) | ($61,159) |

[1] Petitioners stipulated a gross loss in 1997 in the amount of $248, but reported gross income in the amount of $243 on their 1997 return. The discrepancy has not been explained.

Respondent disallowed the claimed Schedule C expense deductions relating to the Amway activity because the activity was not engaged in for profit and because petitioners failed to substantiate the claimed expenses. Petitioners assert that they operated the Amway activity as a business with the intent to earn a profit.

Discussion

Deductions are a matter of legislative grace. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).[1]

Section 162 allows a deduction for all of the ordinary and necessary expenses that are paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a). Alternatively, section 212 allows a deduction for all of the ordinary and necessary expenses paid or incurred during the

---

[1] The examination commenced after July 22, 1998; accordingly, we considered the applicability of sec. 7491. Petitioners did not assert, nor did they present evidence, that they complied with the requirements of sec. 7491(a)(2)(A) and (B) to substantiate items, maintain required records, and fully cooperate with respondent's reasonable requests. Accordingly, the burden of proof remains with petitioners.

taxable year in the production or collection of income. Sec. 212(1). Section 167 allows a depreciation deduction for property used in a trade or business or held for the production of income if the expenses were incurred with a legitimate for-profit activity. Sec. 167(a); Hulter v. Commissioner, 91 T.C. 371, 392 (1988).

Under section 183(a), no deductions attributable to the Amway activity are allowable unless the activity is engaged in for profit, except as provided in section 183(b). Sec. 183(a); Elliott v. Commissioner, 90 T.C. at 960; Dreicer v. Commissioner, 78 T.C. 642, 643 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). Petitioners must have entered into or continued the Amway activity with the actual, honest, and bona fide objective of making a profit. Filios v. Commissioner, 224 F.3d 16 (1st Cir. 2000), affg. T.C. Memo. 1999-92; Hulter v. Commissioner, supra at 392-393; Beck v. Commissioner, 85 T.C. 557, 569 (1985); Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

An activity that is "not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or section 212(1) or 212(2). Sec. 183(c); sec. 1.183-2(a), Income Tax Regs.

The following nonexclusive factors are relevant in determining whether an activity is engaged in for profit: The

manner in which the taxpayer carries on the activity; the expertise of the taxpayer or his advisers; the time and effort expended by the taxpayer in carrying on the activity; the expectation that assets used in the activity may appreciate in value; the success of the taxpayer in carrying on other similar or dissimilar activities; the taxpayer's history of income or losses with respect to the activity; the amount of occasional profits, if any, which are earned; the financial status of the taxpayer; and elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. No single factor is controlling. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Whether a taxpayer's activity has been engaged in for profit is determined by taking into account all of the facts and circumstances of the case. Sec. 1.183-2(a), Income Tax Regs.

Petitioners performed a number of functions which have the superficial indicia of an activity operated for profit. For example, petitioners testified that they prepared a business plan with the assistance of their C.P.A., and the stated plan was to build a network of downline distributors to generate business volume and ultimately to receive "points" or commissions from Amway. Petitioners produced a copy of their written goals (different from their business plan), a one page handwritten document. Petitioners also maintained and produced a log of

"Business Expenses" incurred in 1996 and 1997, and a chart of "Office Expense" from 1996. They maintained and produced monthly calendars reflecting both Amway-related entries and personal entries for both 1996 and 1997. Also, Ms. Ingram claimed that they opened a bank account for their Amway activity.

Nevertheless, we conclude that petitioners' overall approach to their activity was not businesslike. See sec. 1.183-2(b)(1), Income Tax Regs. The records that petitioners produced do not reflect details concerning their Amway activity, such as products sold, clients, or downline distributors. In addition, the goals do not provide any indication of how petitioners planned to achieve the points and commissions, or how to find the customers.

Despite being given ample opportunity to produce relevant business records, petitioners failed to do so, and they failed to offer an explanation for their absence. For example, petitioners failed to produce a copy of their business plan and bank records. Petitioners produced an "Office Expense" chart for 1996, but not for 1997, and did not offer any supporting bills or proof of payment of any of the expenses. Petitioners did not retain paper copies of the quarterly, semiannual, and annual reports of income and expenses that they purportedly kept. Petitioner explained that when their computer upgrade crashed, they lost all reports. We are skeptical that all data that went into the reports was irretrievably lost. Petitioners' inability to produce the

underlying income and expense data, reports, and other business records and their failure to reconstruct the income and expense reports indicate a disregard of businesslike activity and profit. Id.

Petitioners asserted that they changed the way they did business (i.e., marketing) in 1996, but petitioners have offered no factual support for this assertion. Continuing to operate such an unprofitable activity, even after a change in strategy that was unsuccessful, indicates a lack of profit objective. Filios v. Commissioner, 224 F.3d at 24; sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner testified that "if products don't move, profit doesn't move"; yet petitioners failed to provide any indication of how they attempted to sell the Amway products. Petitioners did not present any facts or business records concerning sales of products to customers such as customer lists or distribution order forms. Rather, petitioners' goals list and testimony indicate that they focused on establishing a downline chain of distributors more than they focused on selling products. Moreover, petitioners claimed that they had approximately 30 downline distributors, but they neither produced a list of these downline distributors nor had any of them testify. We are not convinced that petitioners focused on selling Amway products and that they focused on earning a profit.

Petitioners asserted that they went to the library and researched Amway on their own, and that they reviewed various Amway materials before beginning their participation in the Amway activity. There is nothing in the record to support petitioners' assertions. Moreover, the record does not reflect any indication that the C.P.A. with whom they consulted had expertise in marketing consumer products. We are not convinced that petitioners conducted any meaningful independent research concerning their Amway activity or that they sought to educate themselves to overcome their lack of experience and expertise. Sec. 1.183-2(b)(2), Income Tax Regs.

Petitioners each claimed to have spent approximately 10 hours a week pursuing Amway activities, though petitioner occasionally spent additional time attending seminars on weekends. Both petitioners held full-time jobs during the years in issue. In addition, Ms. Ingram experienced health-related problems during the years in issue that prevented her from spending time in pursuit of the Amway activity. We conclude that petitioners did not devote significant time to the Amway activity. Elliott v. Commissioner, 90 T.C. at 972; sec. 1.183-2(b)(3), Income Tax Regs.

Ms. Ingram testified that petitioners became involved in Amway because they thought that it would be an asset that could be sold, which would be valuable for estate planning.

Petitioners produced only two items, two Amway bulletins, one entitled "Bulletin No. 3 Distributorship Inheritance" and one entitled "Bulletin No. 3A Trust", in support of their position. We find that the Amway activity was not an appreciable asset, and we are also not convinced that petitioners believed that it was such an asset.  Sec. 1.183-2(b)(4), Income Tax Regs.

Petitioners' gross income from the sale of Amway products never exceeded their expenses.  Petitioners reported total gross income over a 5-year period of $1,509.  The $61,159 of Schedule C expenses claimed during the 5 years of their participation in the activity virtually guaranteed that petitioners would not earn a profit.  Elliott v. Commissioner, supra at 972; sec. 1.183-2(b)(6) and (7), Income Tax Regs.  Petitioner's partial explanation for their losses, that their downline distributors "weren't very motivated" in selling the Amway products, fails to explain adequately the reason for the continuing losses over a period of years.

Considering the record in its entirety, we are satisfied that petitioners did not have the actual, honest, and bona fide objective of making a profit.  It appears that they became Amway distributors simply to deduct expenses for items of a personal nature.  The claimed Schedule C deductions relating to the Amway activity are allowed only to the extent of the gross income

derived from the activity.[2]  Sec. 183(b)(2); <u>Elliott v. Commissioner</u>, <u>supra</u> at 973.

As the result of our holding above, it is unnecessary for us to address substantiation issues under section 274.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered under Rule 155.</u>

---

[2]  We are uncertain whether the notice of deficiency allowed deductions to the extent of the reported gross income.  In order to take them into account we shall enter a decision under Rule 155.